RECORD NO. 16-1172

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

THEODORE G. HARTSOCK, JR.
as Personal Representative of the Estate of Sarah Mills Hartsock
(Estate of Sarah Mills Hartsock),

*Plaintiff-Appellee,*

v.

GOODYEAR DUNLOP TIRES NORTH AMERICA LTD.,
a foreign corporation;
THE GOODYEAR TIRE & RUBBER COMPANY,
a foreign corporation,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

**OPENING BRIEF OF APPELLANTS
GOODYEAR DUNLOP TIRES NORTH AMERICA LTD. AND
THE GOODYEAR TIRE & RUBBER COMPANY**

E. Duncan Getchell, Jr.*
(804) 775-4388
Michael H. Brady
(804) 775-4327
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916

M. Gary Toole
(407) 838-4061
Bianca G. Liston
(407) 838-4057
MCDONALD TOOLE & WIGGINS, P.A.
Suite 1200
111 N. Magnolia Avenue
Orlando, Florida 32802

*Counsel of Record*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1172__       Caption: __Theodore J. Hartsock, Jr. v. Goodyear Dunlop Tires North America Ltd.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Goodyear Dunlop Tires North America Ltd., now known as Sumitomo Rubber USA, LLC ("SRU")__
(name of party/amicus)

_____

 who is _____an Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                            ☑ YES ☐ NO
        If yes, identify all parent corporations, including all generations of parent corporations:
        SRU is owned by SRI USA, Inc. and SRI America, Inc.  Sumitomo Rubber Industries, Ltd.,
        wholly owns SRI USA, Inc., which wholly owns SRI America, Inc.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                               ☑ YES ☐ NO
        If yes, identify all such owners:
        Sumitomo Rubber Industries, Ltd., is publicly held.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s E. Duncan Getchell, Jr.                     Date:    3/29/2016

Counsel for: Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on _____3/29/2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s E. Duncan Getchell, Jr.                          3/29/2016
        (signature)                                   (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  16-1172        Caption:  Theodore J. Hartsock, Jr. v. The Goodyear Tire & Rubber Company

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Goodyear Tire & Rubber Company
(name of party/amicus)

who is        an Appellant       , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s E. Duncan Getchell, Jr.                    Date:      3/29/2016

Counsel for:  Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on _____3/29/2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s E. Duncan Getchell, Jr.                              3/29/2016
        (signature)                                        (date)

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. iii

**JURISDICTIONAL STATEMENT** ...................................................1

**ISSUE PRESENTED FOR REVIEW** ................................................2

**STATEMENT OF THE CASE** ...........................................................3

     *A.*    *Relevant Background to Discovery Motions* ........................4

     *B.*    *Plaintiff's Motion to Compel Production of Global Design Manual* ...........................................................6

     *C.*    *Defendants' Motions to Protect the Butyl Content from Disclosure* ..............................................7

     *D.*    *Magistrate Judge's Decision on Disclosure of the Trade Secrets* .......................................................11

     *E.*    *Defendants' Appeal from Disclosure Order to District Court* .......................................................14

     *F.*    *Defendants Seek Reconsideration or Certification of the Standard Governing these Trade Secrets, and Are Granted Certification.* .................16

**SUMMARY OF THE ARGUMENT** ................................................18

**ARGUMENT** ....................................................................................19

     **I.**    **South Carolina Law Governs the Scope of Trade Secret Protection with Respect to Discovery in This Products Liability Case Premised upon South Carolina Law.** ...............................19

     **II.**   **The South Carolina Trade Secrets Act Has Been Construed in Controlling South Carolina Supreme Court Precedent to Apply to all Civil Actions and to Provide Greater Protection from Compelled Disclosure of Trade Secrets than Afforded by the Court Below.** .................24

    **A.**    *The South Carolina Supreme Court's interpretation of South Carolina law is binding upon the federal courts.* ...............................................25

    **B.**    *The SCTSA plainly addresses the discovery of trade secrets.* ..........................................................26

    **C.**    *The SCTSA has been authoritatively construed to govern discovery "in any civil action," and to require a heightened showing of relevance and necessity prior to compelled disclosure.* ...........................27

    **D.**    *The District Court did not apply South Carolina's heightened relevance and necessity requirements, nor did Plaintiff meet them* ......................................................31

**CONCLUSION** ...............................................................................34

**CERTIFICATE OF COMPLIANCE** ...............................................36

**CERTIFICATE OF SERVICE** .........................................................37

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Ashcraft v. Conoco, Inc.*,
 218 F.3d 282 (4th Cir. 2000) ...............................................................20

*Auto Owners Ins. Co. v. Totaltape, Inc.*,
 135 F.R.D. 199 (M.D. Fla. 1990) .......................................................22

*Boone v. Boone*,
 546 S.E.2d 191 (S.C. 2001) .................................................................24

*Branham v. Ford Motor Co.*,
 701 S.E.2d 5 (S.C. 2010) .......................................................................4

*Brendle v. Gen. Tire & Rubber Co.*,
 505 F.2d 243 (4th Cir. 1974) ...............................................................25

*Bryte v. Am. Household, Inc.*,
 429 F.3d 469 (4th Cir. 2005) ...............................................................31

*Butler v. Ford Motor Co.*,
 724 F. Supp. 2d 575 (D.S.C. 2010) .....................................................24

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*,
 107 F.R.D. 288 (D. Del. 1985) ..................................11, 13, 16, 17, 32

*Davis v. Leal*,
 43 F. Supp. 2d 1102 (E.D. Cal. 1999) .................................................22

*Erie Railroad Co. v. Tompkins*,
 304 U.S. 64 (1938)...........................................................................21, 22

*Fid. Union Trust Co. v. Field*,
 311 U.S. 169 (1940).........................................................................25, 29

*Griego v. Ford Motor Co.*,
 19 F. Supp. 2d 531 (D.S.C. 1998) ...............................................*passim*

*Herbert v. Lando*,
 441 U.S. 153 (1979).............................................................................20

*Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*,
433 F. App'x 207 (4th Cir. 2011) ........................................................................3

*Hottle v. Beech Aircraft Corp.*,
47 F.3d 106 (4th Cir. 1995) .............................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*,
313 U.S. 487 (1941)........................................................................................23

*Laffitte v. Bridgestone Corp.*,
674 S.E.2d 154 (S.C. 2009) ....................................................................*passim*

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
666 F.3d 244 (4th Cir. 2012) ...........................................................................26

*Limbach Co., LLC v. Zurich Am. Ins. Co.*,
396 F.3d 358 (4th Cir. 2005) ...........................................................................23

*McKellips v. Kumho Tire Co.*,
305 F.R.D. 655 (D. Kan. 2015) ........................................................................22

*Moloney v. United States*,
204 F.R.D. 16 (D. Mass. 2001)........................................................................23

*Pasadena Oil & Gas Wyo. LLC v. Mont. Oil Props. Inc.*,
320 F. App'x 675 (9th Cir. 2009) .....................................................................22

*Polk's Lessee v. Wendal*,
13 U.S. (9 Cranch) 87 (1815) ..........................................................................25

*Republican Party of Minn. v. White*,
536 U.S. 765 (2002).........................................................................................29

*Salve Regina Coll. v. Russell*,
499 U.S. 225 (1991).........................................................................................24

*Solis v. Food Emp'rs Labor Relations Ass'n*,
644 F.3d 221 (4th Cir. 2011) .............................................................20, 24, 31

*Sturdivant v. Continental Tire The Americas, LLC*,
No. 5:14-cv-02852, 2015 WL 263015 (D.S.C. Jan. 21, 2015)..........................28

*United States v. Henriquez*,
   757 F.3d 144 (4th Cir. 2014) ...............................................................25

*Upjohn Co. v. Hygieia Biological Labs.*,
   151 F.R.D. 355 (E.D. Cal. 1993) .........................................................22

*Wilcox v. Arpaio*,
   753 F.3d 872 (9th Cir. 2014) ......................................................19, 24

**Federal Statutes**

28 U.S.C. § 41 ...............................................................................................1

28 U.S.C. § 1292(b) ...........................................................................1, 18, 31

28 U.S.C. § 1294(1) .....................................................................................1

28 U.S.C. §1332(c) ......................................................................................1

28 U.S.C. § 2072 ........................................................................................21

Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933 (Jan. 2, 1975) ...................23

**State Statutes**

1997 S.C. Acts 38, §1 (May 21, 1997) ....................................................26

S.C. Code Ann. § 15-51-10...........................................................................4

S.C. Code Ann. § 15-5-90..............................................................................4

South Carolina Trade Secrets Act, ("SCTSA")

   S.C. Code Ann. §§ 39-8-10 through 39-8-130
   ........................................................ 2, 8, 16, 17, 18, 26, 27, 28, 29, 34

   S.C. Code Ann. § 39-8-20(5)....................................................................3

   S.C. Code Ann. § 39-8-60(B) .......................................................14, 15, 26, 27

**Other Authorities**

120 Cong. Rec. 1409 (Jan. 30, 1974).......................................................21

Fed. R. Evid. 501 ..........................................................................20, 21, 22, 23

Fed. R. Civ. P. 26 ........................................................................................2

Fed. R. Civ. P. 26(c)(1)(G) ........................................................................10

Ranee Saunders, *If I Told You Then I'd Have to Kill You:*
    *The Standard for Discovery of Trade Secrets in South Carolina*,
    61 S.C. L. REV. 717 (2010) ..........................................................26, 29

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
    *Procedure* § 3929 (3d ed.) ...................................................................32

23 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
    *Procedure* § 5421 n.40 (1st ed.) .........................................................22

23 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
    *Procedure* § 5422 (1st ed.) ...........................................................21, 22

## JURISDICTIONAL STATEMENT

The District of South Carolina has subject-matter jurisdiction over this personal injury case under 28 U.S.C. § 1332 because Plaintiff Hartsock, representative of the estate of a deceased citizen of South Carolina, demands in excess of $75,000 (exclusive of interests and costs), JA 24, 28–31, ¶¶1, 2, 5, 25–40, and neither Defendant is a citizen of South Carolina for purposes of diversity jurisdiction, 28 U.S.C. §1332(c). JA 24–25, ¶¶ 3–5; JA 33–34, ¶¶ 3–5; JA 45–46, ¶¶3–5.

Appellate jurisdiction lies from the decision appealed from under 28 U.S.C. § 1292(b). On January 19, 2016, the District of South Carolina certified its November 30, 2015 order (the "Certified Order"), JA 586–87; *see* JA 559–75, for interlocutory review to this Court (the "Certification Order"), JA 634–35, and the Defendants, Goodyear Dunlop Tires North America, Ltd.[1] and The Goodyear Rubber & Tire Co., petitioned this Court for permission to appeal on January 29, 2016. JA 718–47. Defendants' petition was granted on February 18, 2016. No. 16-141, Dkt. No. 9. This Circuit has jurisdiction over this appeal from the Certified Order of the District of South Carolina by reason of 28 U.S.C. §§ 41, 1294(1).

---

[1] Goodyear Dunlop Tires North America Ltd. ("GDTNA") is now known as Sumitomo Rubber USA, LLC ("SRU"). Accordingly, references to GDTNA have been updated to read SRU.

## ISSUE PRESENTED FOR REVIEW

This §1292(b) appeal from the Certified Order raises one overarching issue: what standard governs the parties' dispute over Defendants' trade secrets protections? *See* JA 634. More particularly, the appeal presents the question whether the district court erred when it applied Rule 26 and federal case law, rather than the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. §§ 39-8-10 through 39-8-130, and South Carolina precedent, in determining the burden of production and persuasion that Hartsock must bear to overcome the trade secret privileges asserted by Defendants, Sumitomo Rubber USA, LLC ("SRU") and The Goodyear Tire & Rubber Company ("GTRC").

Defendants are the manufacturer (SRU) and designer (GTRC) of the Subject Tire.[2] The trade secrets at stake involve GTRC's design information for that model of tire, GTRC's Global Design Manual, and the chemical composition of Defendants' manufacturing formula for the Subject Tire, particularly its inner liner's Butyl Content.[3] Both the Global Design Manual and the Subject Tire's Butyl Content are closely guarded and highly valuable trade secrets owned by the

---

[2] The tire model at issue, internally designated as G670RV size 295/80R22.5, bearing DOT No. DANU2CAW3503, was designed, marketed and sold by GTRC for use on recreational vehicles (the "Subject Tire"), and was manufactured by GDTNA, now SRU, in Tonawanda, New York. JA 84.

[3] The portion of the composition formula in question here is the percentage of halobutyl, one of the butyls sometimes used in the composition of tire components and the highly impermeable rubber that is used in the manufacturing formula for the Subject Tire's inner liner. JA 1099–1100; JA 1219–20.

Defendants (collectively, the "Trade Secrets"). Such information has been regularly held to be protected by federal and state courts, and Plaintiff has never contested that the Trade Secrets qualify as such under South Carolina law. JA 364; JA 372; JA 430; JA 562. Furthermore, the record itself unmistakably shows that they do so. *Compare* JA 279–88; JA 515–19, *with* S.C. Code Ann. § 39-8-20(5); *see also, e.g.*, *Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, 433 F. App'x 207, 213 (4th Cir. 2011) (unpublished).

All of Plaintiff's merits claims—for common law negligence, strict liability, breach of warranties, and statutory claims for wrongful death and suffering—are governed by South Carolina law. Nonetheless, the District Court applied the less exacting federal protections to the Defendants' Trade Secrets. The District Court's selection of the federal standard was outcome determinative with respect to its order to produce the Trade Secrets, as demonstrated by its decision to certify this issue and as demonstrated by controlling South Carolina case law.

## STATEMENT OF THE CASE

This interlocutory appeal is taken from the discovery phase of a personal injury case brought against SRU and GTRC. The case arises from a fatal collision of automobiles on Interstate Highway 26 in Calhoun County, South Carolina, that Plaintiff alleges was caused by the blowout of a particular tire (the "Tire in

Question").[4]  Plaintiff has offered various theories with respect to design,

manufacture, and failure to warn that are framed under South Carolina common

law causes of action for negligence, strict products liability, and breach of express

and implied warranties.  Plaintiff seeks damages under the provisions of South

Carolina's wrongful death and survival statutes.  S.C. Code Ann. §§ 15-51-10 and

15-5-90; JA 24, 28–31, ¶¶1, 25–40; *see* No. 16-141, Dkt. No. 8 at 2.

## A.    *Relevant Background to Discovery Motions*

Plaintiff premises his design defect theory, the only one on which he claims

the Trade Secrets are relevant, No. 16-141, Dkt. No. 8 at 2, upon the notion that the

thickness of the inner liner of the Tire contributed to the blowout, *see* JA 74, and

that there was an alternative, feasible design that would have prevented it.  *See*

*Branham v. Ford Motor Co.*, 701 S.E.2d 5, 14 (S.C. 2010) (holding that "the

exclusive test in a products liability design case is the risk-utility test with its

requirement of showing a feasible alternative design").  Under South Carolina law,

it is the actual tire as well the alternative design proposed by Plaintiff that are on

trial.  *See id.* at 16 & n.16 (requiring Plaintiff to "point to a design flaw in the

product and show how his alternative design would have prevented the product

---

[4] The Tire in Question was purchased by James E. and Linda Rodrigues of
Melbourne, Florida, and installed by them on the recreational vehicle (RV)
involved in the accident.  The Rodrigueses were operating the RV, while towing a
Lincoln pick-up truck and golf cart, when they collided with the decedent Sarah
Mills Hartsock.  JA 265–66.

from being unreasonably dangerous.  This presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design").  Plaintiff offered Dennis Carlson as its expert to address these issues (hereinafter "Carlson" or "Plaintiff's Expert").[5]

In response to his more than one hundred requests for production, JA 84–145, Plaintiff was provided with thousands of pages of documents by Defendants, including approximately 1,400 pages of confidential and propriety information.  JA 84–152; JA 234; JA 250–51, ¶8; JA 263–64; JA 346.  This included information on the thickness of the inner liner of the Subject Tire, as well as the development file and engineering specifications, all internal testing results, cut tire sheets, and Global Master Specification for Cut Tire Limits applicable the Subject Tire.  JA 262–64; JA 162; JA 818; *see also* JA 986:2–14; JA 987:11–23.

The information produced shows the weight, length, width, weights and targets/minimums for the inner liner and barrier gauge components.  Moreover, Plaintiff has possession and control of the Tire in Question, ownership and access to the other seven tires on the RV, JA 206; JA 258–61; JA 378 n.4; JA 404–07; JA 408–09, and has been afforded numerous depositions of key personnel of the Defendants.  *See, e.g.*, JA 158–64; JA 1084–1116; JA 1117–65; JA 157D.

---

[5] Carlson was identified as Plaintiff's expert on July 6, 2015, JA 419, more than a month after the Protective Order Motions, JA 226–37, 338–48, had been initially briefed.  JA 375–83, 415–16.

## B.      *Plaintiff's Motion to Compel Production of Global Design Manual*

After this extensive production, and after offering a theory of defect, Plaintiff moved to compel production of the Global Design Manual (the "Motion to Compel"), (JA 69–83; JA 165–66), almost a year after objections had first been raised.  JA 121–22; JA 145.  In this motion, Plaintiff asserted that "[o]nly with complete design files for each of the tires in the G70 line will Plaintiff be able to meaningfully evaluate the design of" the Tire in Question.  JA 77; *accord* Dist. Ct. Dkt. No. 120 at 6.

Defendants opposed the Motion to Compel production of additional proprietary information, including the Global Design Manual, JA 262–74, explaining that that document had not been properly requested, JA 271–72, was unnecessary to Plaintiff's design defect theory in light of information already provided, and was privileged from disclosure as a trade secret, JA 272 & n.5. Defendants offered the affidavit of Terrence L. Parsons, a Chief Tire Analysis Engineer for GTRC, who averred that the trade secrets requested by Plaintiff were secret, highly valuable, kept in strictest confidence, could not be obtained by any proper commercial means, and that their disclosure would enable competitors to gain a competitive advantage, and thereby substantially harm GRTC.  JA 280, ¶5, 283, ¶¶13, 14, 286–88, ¶¶24–27.

In supplemental briefing, Defendants submitted an affidavit from Kevin C. Legge, also a Chief Tire Analysis Engineer, who offered similar testimony in support of the value, confidentiality and closely guarded nature of the Global Design Manual. JA 515–19; *see* JA 465–66. Legge explained that the Global Design Manual "includes information regarding [GTRC's] compound formulas, and its core design methodology and philosophy," that such information involves "all aspects of the development of tires" by GTRC, and that access to the Manual is closely guarded and limited within GTRC to persons "on a need to know basis with express authorization." JA 516, ¶6. Legge specifically averred that "[d]isclosure of the global design manual would result in immediate harm to" GTRC. *See* JA 516, 518–19, ¶¶6, 11.

Plaintiff, as to the Motion to Compel production of the Global Design Manual, effectively conceded that it had not been the subject of a proper, prior request (pointing only to an overbroad request propounded two years before), and failed entirely to join issue on Defendants' claim of trade secret privilege. JA 329–31; JA 335.

## C.    *Defendants' Motions to Protect the Butyl Content from Disclosure*

About the same time as the Motion to Compel, Plaintiff sought to elicit deposition testimony from multiple Defendants' witnesses concerning the Butyl Content of the Subject Tire. JA 229; JA 340. Defendants' 30(b)(6) witnesses,

7

Denise R. Seiler (an employee of SRU at its Tonawanda, New York facility) and Terrence L. Parsons (a GTRC engineer), refused to answer on instruction of counsel, who asserted Defendants' trade secret privilege. *Id.* Numerous previously deposed witnesses had similarly refused on this basis, without challenge from Plaintiff's counsel. *See* JA 238–39.

In response to this late-developing discovery dispute over Butyl Content, brought just as Plaintiff was moving for summary judgment, *see* JA 194–205,[6] Defendants sought protective orders covering Seiler and Parsons to establish their right to refuse disclosure of this highly sensitive trade secret (the "Protective Order Motions"). JA 226–37; JA 338–48. In these Motions, and in prior correspondence with opposing counsel, Defendants explained that the Butyl Content of the Subject Tire was unquestionably a trade secret, that its proper protection justified non-disclosure (and not merely limited disclosure), and that Plaintiff had failed to show that "this information is [even] relevant to Plaintiff's defect claim," much less make "the requisite showing of necessity." JA 234–36; JA 345–47; *see also* JA 277. In correspondence attached to the motion, Defendants challenged Plaintiff to "explain how this information is discoverable under South Carolina Trade Secret[s] Act and pursuant to *Laffitte v. Bridgestone Corp.*, 674 S.E.2d 154 (S.C. 2009)." JA 277; 381. Defendants urged, as they had "frequently done throughout

---

[6] Defendants opposed the motion for summary judgment and the Court denied it. *See* Dist. Ct. Dkt. Nos. 110, 120.

this litigation," JA 629, that South Carolina law provided the standard for analyzing the claim of trade secret privilege and that South Carolina's stringent standard was not met.  JA 381.

Defendants further supported their claim of trade secret protection from disclosure with an affidavit from Parsons, who averred that the Butyl Content was closely guarded, confidential information held by the Defendants, withheld even from GTRC's tire designers, and that this compound formula could not be obtained by any other proper means.[7]  JA 244–47, ¶¶4–9, 12–14.  Parsons also stated that access to the "percentage of halogenated butyl in the inner liner of the subject tire" was "part of [GTRC's] core trade secret material," and that "disclosure of that highly confidential information would likely severely injur[e  GTRC] in the marketplace."  JA 246–47 , ¶¶11, 14.  Parsons explained that compound formulas, including the content of butyl in the formula for a tire, "do not reveal whether a tire containing those compounds will have satisfactory or unsatisfactory physical properties after it is vulcanized," and that proper design and manufacture, or the presence of a defect, may be determined by examining the tire itself, and not otherwise.  *See* JA 244, 246–47, ¶¶ 5, 13, 15 16; JA 466.

Defendants both argued and offered proof that a protective order, preventing exposure beyond the participants in this case, was not an adequate substitute for

---

[7] Kevin C. Legge, also a Chief Tire Analysis Engineer for GTRC, offered an affidavit to this same effect.  JA 517, ¶7.

9

preventing disclosure.  Defendants cited Plaintiff's expert's lengthy history of disregard for confidentiality orders, JA 463–66; JA 470–75; JA 476–77; JA 478–88; JA 489–96; JA 497–509; JA 510–513, including improperly volunteering Michelin's trade secrets in this case, JA 1204:9–25, 1205:16–1206:7; explained that the standard required merely a showing that harm might occur from discovery; and offered recent examples of trade secret theft, specifically in the tire industry. *See* JA 466–68 (citing published and unpublished federal cases); JA 520–27; JA 528–41.

In response, Plaintiff merely argued (without evidentiary support) that he was entitled to discover those conceded trade secrets.  *See* JA 364; JA 430. Plaintiff did assert that the Butyl Content of the Subject Tire's inner liner "is relevant to the performance of the inner liner and additional design defects" in the Subject Tire, and that "[i]nsufficient butyl content will contribute to … the failure mode of the [S]ubject [T]ire," citing only the testimony of Parsons and Seiler.  *See* JA 363 & nn. 11–12; JA 1101:12–1103:7; JA 1116:6–13; JA 370–71 & nn. 7–9; JA 1131:11–22, JA 1133:18–1134:17, JA 1142:9–1144:14.  The cited testimony, however, offered no support for the propositions advanced by Plaintiff, which were expressly contradicted by Parsons in his affidavit offered in support of the protective order.  *See* JA 247, ¶¶15–16.

Plaintiff further asserted that his right to discovery was governed by Federal Rule of Civil Procedure 26(c)(1)(G), as interpreted by the federal courts, specifically *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del. 1985), JA 363–64; JA 371–72; JA 428–29, and not by South Carolina's trade secrets statute and South Carolina Supreme Court precedent interpreting it. *See* JA 429 & n.7. Plaintiff initially claimed that the federal standard was satisfied by counsel's argument that Butyl Content was relevant. JA 364; JA 372–73. However, in later briefing, Plaintiff conceded that evidence was necessary, and argued that the expert report of Dennis Carlson and certain deposition testimony were adequate to show relevance and necessity under the federal standard. *See* JA 430–33; *see* JA 1181–84; JA 1185–1202. Plaintiff never contended below that South Carolina's standard either has been or could be satisfied on the record in this case.

### D.    *Magistrate Judge's Decision on Disclosure of the Trade Secrets*

Both the Motion to Compel and Protective Order Motions were referred to Magistrate Judge Mary Gordon Baker, who conducted an August 31, 2015 hearing in which the parties argued their positions. JA 844–929; JA 636–717. Plaintiff offered Carlson's expert report under seal, JA 692:4–693:1; JA 815–43, and read portions of the expert report into the record, *see* JA 905:7–906:13. In supplemental

11

briefing after the hearing, Plaintiff also offered excerpts of Carlson's deposition, which was taken on September 2. *See* JA 1185–1206.

At the hearing, Defendants responded that, in the tire manufacturing industry, "[t]his is [like] the recipe or the formula for Coke," JA 695:13–17, and noted that Plaintiff had conceded both the trade secret status and the harm from disclosure, JA 695:22–696:7. Defendants explained that it is Plaintiff's burden "to establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." JA 696:8–11. Citing to the South Carolina Supreme Court case of *Laffitte*, "which was essentially on all fours with this case," Defendants argued that Plaintiff's expert had merely noted that he "would like to look at" the Butyl Content, and that he had not "explained exactly why it's relevant and why [he] cannot prepare [his] case or [his] opinions without it." JA 696:16–18, 698:25–699:4.

The Magistrate Judge stated, as to the Global Design Manual, that she was "not too worried about" disclosure "because we've got confidentiality orders for trade secrets," and stated that "perhaps it's relevant to an expert witness's opinion." JA 557:21–22, 668:21–669:3. The Magistrate Judge framed the question regarding production of the Butyl Content as whether "butyl content can never be relevant in a tire failure case?" JA 699:10–17, 702:2–4. The Magistrate Judge also questioned whether *Laffitte* applied, and took all of the motions under

12

advisement, inviting supplemental briefing. JA 670:23–671:2, 700:23–701:6, 713:16–714:4, 715:21–716:4.

On October 22, 2015, following supplemental briefing on the trade secret issues, (JA 422–33, 462–69), and a brief telephonic hearing,[8] the Magistrate Judge entered an order, directing disclosure of the Trade Secrets to Plaintiff (the "Disclosure Order"). The Court concluded that Defendants could be compelled to disclose the Butyl Content and Global Design Manual, relying heavily on the reasoning and authority of *Coca-Cola Bottling of Shreveport*, 107 F.R.D. 288, which she quoted, either directly or through other authorities, six times. JA 563–64.

Although finding that the Butyl Content was a trade secret, disclosure of which, even under a protective order, might well harm Defendants, the Magistrate Judge relied on conclusory assertions, excerpted from the deposition of Plaintiff's expert, to conclude that discovery was "necessary." JA 562, 564.[9]

---

[8] The Magistrate Judge held a telephonic hearing on September 22, 2015 to address the concerns raised about disclosure to Plaintiff's expert, Dennis Carlson, and to inquire as to why this "serious issue" was raised first in the supplemental briefing, and not at the August 31, 2015 hearing. JA 543 2:8–16, 544:2–4. Defendants explained that at the time of the briefing, the Plaintiff's expert in question had not been identified and that it was not until the hearing, where the Court suggested that a confidentiality order would be sufficient, that this issue became apparent. JA 545:19–25. Defendants explained that no confidentiality order could allay their concern. *See* JA 552:12–17; JA 557–58; *see* JA 57–68.

[9] The Magistrate Judge did not engage the evidence presented by Defendants that simply knowing the manufacturing formula of a tire as it had existed, prior to

The Magistrate Judge did not address Plaintiff's failure to make any showing, under any standard, with regard to discovery of the Global Design Manual as it relates to the Subject Tire, but simply ordered that trade secret's disclosure. JA 560, 575; *see* JA 577; JA 667:21–669:3.

### E.    *Defendants' Appeal from Disclosure Order to District Court*

Defendants filed objections with the District Court, challenging the Disclosure Order insofar as it compelled production of the Butyl Content and Global Design Manual. JA 577–78. With regard to the latter, Defendants noted that they had supported their trade secret privilege claim with an affidavit demonstrating the Global Design Manual to be a trade secret the disclosure of which would cause immediate harm to GTRC. JA 579 (citing JA 515–19). Defendants also cited Plaintiff's failure to show any particularized necessity for the Global Design Manual's disclosure. *See* JA 579–81 & n.3.

---

production and curing, would not shed any light on the reasons that the Tire in Question failed to retain air pressure. Instead, she presumed from Plaintiff's expert's general observations that "the compound used [in] the inner liner" must be "sufficient to restrict the migration of inflation pressurized air" meant that knowing the manufacturing formula of the inner liner was "a critical component of determining the cause of the tire failure." JA 564. The Magistrate Judge further concluded that knowledge of the butyl content was necessary to evaluate a defense, relying upon Carlson's conclusory statement that he needed "to know what the butyl content" was in order to evaluate the defense "that [the] barrier gauge is also a layer of tire that prevents air permeation into the structure of the fire [sic]." JA 564. That assertion however is illogical because barrier gauges do not contain butyl. *See* JA 621–22.

Defendants objected that the Magistrate Judge had applied the wrong legal standard to Plaintiff's efforts to overcome their trade secret protections, arguing that the correct standard was provided by S.C. Code Ann. § 39-8-60(B), as interpreted by *Laffitte v. Bridgestone Corp.* *See* JA 579–81 & n.3. Defendants noted that *Laffitte* had rejected the reasoning of *Griego v. Ford Motor Co.*, 19 F. Supp. 2d 531 (D.S.C. 1998), cited by Plaintiff, (JA 429–30 n.7), and had held that the greater protections provided by S.C. Code Ann. § 39-8-60(B) applied to "a product liability action." JA 580 n.3.

Defendants went on to explain why the South Carolina standard had not been met with regard to the Butyl Content. No evidence had been presented showing or explaining how Plaintiff's Expert's "knowing the []butyl content of the inner liner, as opposed to Mr. Carlson's observations of the tire at issue, will demonstrate a defect" or how "the failure to discover this information will adversely affect Plaintiff's proof of the case." JA 583; *see* JA 581–82. Indeed, Plaintiff's Expert had stated that he would opine that the Tire in Question was defective because it was too thin, and would offer his proposed alternative design, even without knowing the Butyl Content or reviewing the Global Design Manual. JA 582; *see* JA 432; JA 1197:19–1198:14. Furthermore, Plaintiff left unaddressed Parsons' testimony that the Butyl Content of the compound formula prior to manufacture cannot be used to determine how a tire will perform or whether it was

15

improperly manufactured.  JA 582 (citing JA 243–48).  On these facts, Defendants argued, no showing that disclosure was necessary had been made.

The district court, without further briefing or argument, adopted the Magistrate Judge's "order as its own," overruling Defendants' objections.  JA 586–87.

### F.    *Defendants Seek Reconsideration or Certification of the Standard Governing these Trade Secrets, and Are Granted Certification.*

Defendants then sought reconsideration and re-emphasized the seriousness of this decision, explaining that because "Defendants' need to protect this information outweighs any benefit they may obtain in this litigation by using it in their defense," Defendants do not even disclose these Trade Secrets to their own experts.  JA 595.  Defendants argued that the "determination that Plaintiff met his burden warranting the discovery of trade secret information constitutes a clear error of law" in light of "the relevant case law."  JA 594.  This is because *Coca-Cola Bottling of Shreveport, Inc.*, relied upon by the Magistrate, does not require a showing "with specificity exactly how the lack of information will impair the presentation of the case on the merits to the point [such] that an unjust result is real, rather than a merely possible, threat."  JA 599–600 (citing other authorities so requiring).

Defendants urged that the controlling case law—specifically the Supreme Court of South Carolina's construction of the South Carolina Trade Secrets Act—

16

required such a showing.  *See* JA 602–04.  And Defendants argued that this

standard had not been met because Carlson "developed his opinion [of defect and

alternative design] without knowledge of either the" Butyl Content or the Global

Design Manual.  JA 594, 599–600.  "Absent a specific showing" as to how

knowledge of the Trade Secrets is required to "prevent an unjust result," disclosure

cannot be ordered.  JA 602.  Defendants alternatively sought certification to this

Court.  JA 605–06.

Plaintiff, in response to the reconsideration motion, conceded that the

Magistrate Judge had relied heavily on *Coca-Cola Bottling Co. of Shreveport* to

the disregard of the SCTSA.  JA 627–28.  Plaintiff nonetheless opposed

Defendants' reconsideration motion, arguing that "[t]he only law applicable to the

issue before the Court is federal law," citing district court decisions from South

Carolina.  JA 627–28.  Plaintiff principally relied upon *Griego*, 19 F. Supp. 2d 531,

which had held that the South Carolina Trade Secrets Act's protections "did not

apply to any action that is not based on misappropriation of a trade secret or

protection against such misappropriation" and so did not apply to a tort/products

liability action against an automotive company.  *Id.* at 533.

Plaintiff conceded that this conclusion is directly contrary to *Laffitte*, which

rejected *Griego*'s interpretation of the SCTSA, JA 630, and that the latter had

adopted a more demanding standard for whether trade secrets must be disclosed,

17

JA 628–29.  Plaintiff inexplicably maintained that *Laffitte*'s interpretation is not

binding on federal district courts, faulted *Laffitte* for not addressing a section of the

SCTSA, and insisted that the SCTSA and the decisions of the Supreme Court of

South Carolina have "no place in the analysis of whether Defendants must

produce" the trade secrets in this diversity action.  JA 629–30.  Finally, Plaintiff

claimed that the issue did not meet the standards for § 1292(b) certification.  JA

630–32.

On January 19, 2016 the district court denied the motion for reconsideration,

but found that "the parties' arguments as to what standard governs the parties'

dispute over Defendants' trade secret" presented "a controlling question of law as

to which there is substantial ground for difference of opinion" and concluded that

"an immediate appeal from the order may materially advance the ultimate

termination of the litigation."  JA 634.  The Court, *sua sponte*, stayed "[a]ll

proceedings in this matter … during the appeal," if any.  JA 635.

On January 29, Defendants timely petitioned for permission for appeal of the

Disclosure Order, JA 718–47, which Plaintiff opposed.  No. 16-141, Dkt. No. 8.

This Court granted an appeal on February 18.  No. 16-141, Dkt. No. 9.

## SUMMARY OF THE ARGUMENT

The Federal Rules of Evidence plainly require federal courts to apply South

Carolina law to determine the scope of Defendants' privilege from disclosure of

the Trade Secrets.  Equally plain, the State of South Carolina has adopted greater protections from discovery of trade secrets for civil litigants than presently recognized by federal common law.  These protections have been authoritatively construed by the Supreme Court of South Carolina to forbid disclosure unless the party seeking discovery shows that the information sought is vital to the theory of the case and absolutely necessary for establishing it.  Under this standard, an argument that Defendants' harm from disclosure might be mitigated by sealing or by the entry of confidentiality orders is irrelevant.

Because the correct standard clearly was not applied below, the Court should reverse the Disclosure Order, order that South Carolina law be applied, and remand.  In the alternative, because Plaintiff has been afforded the opportunity to meet his evidentiary obligations to compel trade secret disclosure, but has clearly failed under applicable law, this Court should reverse and order nondisclosure.

## ARGUMENT

**I.   South Carolina Law Governs the Scope of Trade Secret Protection with Respect to Discovery in This Products Liability Case Premised upon South Carolina Law.**

Federal Courts of Appeals review de novo the legal question concerning which sovereign's law of privilege—federal law or South Carolina's—controls Plaintiff's claimed entitlement to discovery of the Trade Secrets, including the

19

scope of that privilege. *See Wilcox v. Arpaio*, 753 F.3d 872, 875 (9th Cir. 2014) ("'We review de novo the ruling of a district court on the scope of a privilege.' *United States v. Chase*, 340 F.3d 978, 981 (9th Cir. 2003) (en banc). 'We also review de novo the question of when state law applies to proceedings in federal court.' *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007)."); *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011) ("This court reviews *de novo* a district court's decision regarding the scope and applicability of an asserted privilege to the extent the court's holding rests on application of controlling legal principles to the facts." (internal quotation marks omitted)).

It is plainly erroneous to apply federal common law, rather than South Carolina law, as the standard governing Defendants' asserted trade secret privilege in response to discovery aimed at proving a design defect claim arising under South Carolina law. Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see Herbert v. Lando*, 441 U.S. 153, 182 (1979) (Brennan, J., dissenting in part) (citing Rule 501 and holding that because the cause of action arose under state law, the scope of any non-constitutionally grounded claim of privilege must be that of state law); *Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 286 (4th Cir. 2000) ("[I]n a diversity action the availability of an evidentiary privilege is governed by the law of the forum state.").

20

"It is generally true that the Federal Rules of Evidence require a district court sitting in diversity to defer to applicable state rules on presumptions, privileges, and competency."  *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 107 n.1 (4th Cir. 1995).

While federal courts were not clearly compelled to apply state privilege law by the Rules Enabling Act, 28 U.S.C. § 2072, or under the reasoning of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), Congress, in its 1975 revision to Federal Rule of Evidence 501, determined that issues of privilege "were rather matters of substantive law than they were simply rules of evidence" and so directed that state law should govern.  120 Cong. Rec. 1409 (Jan. 30, 1974) (remarks of Mr. Dennis).[10]  In doing so, Congress, in the words of a prominent commentator, "deprive[d] federal courts of the power to disregard state privileges."[11]

---

[10] "Whatever division there may have been among the scholars on this point, the legislators were all but unanimous in rejecting the Progressive fetish for uniformity in favor of the application of state privileges in cases where 'state law supplies the rule of decision.' While the legislative history of the state law proviso tends to support the view that Congress felt that privileges could only be rationally classified as 'substantive' under both the Enabling Act and the Erie doctrine, one need not go this far to justify Congressional action. Even if privileges are in that borderland where they could be classified as either 'substantive' or 'procedural,' Congress has chosen to exercise the 'Hanna option' so as to deprive federal courts of the power to disregard state privileges."  23 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5422 (1st ed.) (internal quotation marks omitted).

[11] *Id.* As explained by the House Subcommittee that proposed what became the provision at issue, Rule 501's ultimate sentence "is designed to mandate the

Courts across the land apply state trade secrets laws to discovery in federal courts, apparently without exception other than in the District of South Carolina. *See, e.g.*, *Pasadena Oil & Gas Wyo. LLC v. Mont. Oil Props. Inc.*, 320 F. App'x 675, 677 (9th Cir. 2009) (noting that "[s]tate privilege law generally applies to state claims brought in federal court pursuant to diversity jurisdiction, Fed.R.Evid. 501," and applying that rule to a claim of trade secrets privilege); *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 662 (D. Kan. 2015) ("Although there is no federal discovery privilege for trade secrets, state law governs privileges in civil diversity cases." (internal footnotes omitted)); *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (applying California law of trade secrets to question of whether party was entitled to discovery of certain information in a federal civil case); *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) ("State privilege law applies, as in the instant case [involving an assertion of California's trade secret privilege], to state claims brought in federal court pursuant to diversity jurisdiction."); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 203 (M.D. Fla. 1990) ("Florida privilege law controls in this declaratory

---

application of State privilege law in civil actions governed by *Erie [R.]R. Co. v. Tompkins*, 304 U.S. 64, a result in accord with current Federal court decisions. The Subcommittee deemed the proviso to be necessary in light of the Advisory Committee's view (see its note to Court Rule 501) that this result is not mandated under Erie." *See* 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5421 n.40 (1st ed.) (quoting Subcommittee Note, 2 House Hearings, p. 369).

judgment action for which Florida law provides the rule of decision. Therefore, defendant's federal case law does not apply" to trade secret objection to withholding discovery); *cf. Moloney v. United States*, 204 F.R.D. 16, 21 (D. Mass. 2001) (observing that "Federal Rule of Evidence, Rule 501 makes state law privileges applicable in many federal court cases," citing trade secrets protection as an example). This consensus with regard to trade secret privileges follows naturally from the plain language of Rule 501. *See* 1974 Advisory Comm. Notes to Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933 (Jan. 2, 1975) (adopting Fed. R. Evid. 501 and noting that listed in an earlier draft among the privileges was that of "trade secrets").

There can be no question but that South Carolina law "supplies the rule of decision" as to Plaintiff's design defect claims in this case. A district court, sitting in South Carolina, and presiding over an action based on diversity jurisdiction, must apply South Carolina choice of law principles in determining what state's law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that federal courts sitting in diversity must apply the choice of law rules of the state in which they sit); *accord Limbach Co., LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) ("In an action based upon diversity of citizenship, … [t]he district court must apply the law of the forum state, including its choice of law rules." (internal citation omitted)). South Carolina's choice of

23

law rules plainly require that the claims in this action, premised upon injuries occurring in South Carolina, be governed by South Carolina substantive law. *See Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001) ("Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the *lex loci delicti*, the law of the state in which the injury occurred."); *accord, e.g.*, *Butler v. Ford Motor Co.*, 724 F. Supp. 2d 575, 579 (D.S.C. 2010) (holding that "South Carolina law provides that the substantive law of the state in which an injury occurs controls a case brought within South Carolina's jurisdiction" and applying this rule to a products liability action brought against a tire manufacturer, among others, alleging, inter alia, defective design). Indeed, Plaintiff has expressly embraced application of South Carolina law to the merits of this case. *See, e.g.*, JA 24, ¶1, JA 30–31, ¶¶35–40; JA 201–02.

## II. The South Carolina Trade Secrets Act Has Been Construed in Controlling South Carolina Supreme Court Precedent to Apply to all Civil Actions and to Provide Greater Protection from Compelled Disclosure of Trade Secrets than Afforded by the Court Below.

This Court reviews de novo a district court's determination whether state law applies, *Wilcox*, 753 F.3d at 875, the interpretation to be given state law, *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991), and the "scope and applicability of an asserted privilege … ." *Solis*, 644 F.3d at 226.

Although controlling South Carolina law was repeatedly cited by Defendants, the district court elected to rely exclusively on federal common law in

analyzing the scope of Defendants' trade secret privilege. *See* JA 563–64. Instead, it should have looked to the statutory law of South Carolina, as well as to decisions of the highest court of that State, the Supreme Court of South Carolina. Had it done so, it would have concluded that much more need be shown by Plaintiff before an order compelling the Trade Secrets' disclosure could be justified.

### A.    *The South Carolina Supreme Court's interpretation of South Carolina law is binding upon the federal courts.*

Although denied by Plaintiff, *see* No. 16-141, Dkt. No. 8 at 8, it has been established beyond all debate since the time of John Marshall that federal courts are bound to give state law the meaning ascribed it in authoritative pronouncements of a state's highest court. *See, e.g.*, *Polk's Lessee v. Wendal*, 13 U.S. (9 Cranch) 87, 98 (1815) (Marshall, C.J.) ("In cases depending on the statutes of a state, … this Court adopts the construction of the state where that construction is settled, and can be ascertained."). Put simply, "[t]he highest state court is the final authority on state law." *Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940); *see, e.g.*, *Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974) ("A federal court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state."). This is equally true for matters of statutory interpretation. "[F]ederal courts have no 'authority to place a construction on a state statute different from the one rendered by the highest court of the State.'" *United States v. Henriquez*, 757 F.3d 144, 148 (4th Cir. 2014)

(quoting *Johnson v. Fankell,* 520 U.S. 911, 916 (1997)).  Put another way, only in

"the absence of a construction of the relevant state statute by the state's highest

court" may a federal court "examine and decide the state law issue independently."

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 251 (4th Cir.

2012).

### B.    The SCTSA plainly addresses the discovery of trade secrets.

In 1997, the South Carolina General Assembly amended South Carolina's

Uniform Trade Secrets Act, renaming it the South Carolina Trade Secrets Act, S.C.

Code Ann. § 39-8-10, and adopting a number of provisions unique to South

Carolina.  *See* 1997 S.C. Acts 38, §1 (May 21, 1997).  Among these was the

requirement that a "substantial need" be shown by the proponent of discovery

seeking a trade secret.[12]  S.C. Code Ann. § 39-8-60(B).  The SCTSA provides that

there is a "substantial need" only when

> (1) the allegations in the initial pleading setting forth the
> factual predicate for or against liability have been plead
> with particularity; (2) the information sought is directly
> relevant to the allegations plead with particularity in the
> initial pleading; (3) the information is such that the
> proponent of the discovery will be substantially
> prejudiced if not permitted access to the information; and
> (4) a good faith basis exists for the belief that testimony

---

[12] *Cf.* Ranee Saunders, *If I Told You Then I'd Have to Kill You: The Standard for Discovery of Trade Secrets in South Carolina*, 61 S.C. L. REV. 717, 717–18 (2010) (hereinafter, Saunders, *Trade Secrets in South Carolina*) (noting that "[t]his specific language of the statute … is unique to South Carolina").

based on or evidence deriving from the trade secret
information will be admissible at trial."

*Id.*, § 39-8-60(B).

The framers of the SCTSA clearly did not view a protective order as a
substitute for searching judicial scrutiny of whether there was a "substantial need"
for disclosure. The Act requires that protective orders be entered for all
"[i]nformation produced pursuant to this section;" that the information "only be
disclosed to persons identified in the written protective order of the court;" and that
the information "be used or disclosed only in the action in which it is produced."
Yet, in all cases, "*before* ordering discovery a court *shall first determine* whether
there is a substantial need by the party seeking discovery for the information." *Id.*
(emphases added).

> **C.    The SCTSA has been authoritatively construed to govern discovery
> "in any civil action," and to require a heightened showing of
> relevance and necessity prior to compelled disclosure.**

The 1997 amendments to South Carolina's Uniform Trade Secrets Act were
first construed by the District of South Carolina in *Griego*, 19 F. Supp. 2d 531. In
that case, another tire company facing similar claims contended that the protections
provided by S.C. Code Ann. § 39-8-60(B) applied "to actions based on diversity in
federal court," but the *Griego* Court held that it instead "covers only a narrow
category of cases—those actions based on misappropriation of trade secrets." 19
F. Supp. 2d at 532. Although noting the text of the SCTSA and its logical

implication—that the South Carolina General Assembly had mandated "heightened protection for trade secrets and a greater showing required of persons seeking discovery of such trade secrets," *id.*—the *Griego* Court failed to give effect to the statute's plain meaning. Rather than apply the SCTSA's "substantial need" protections to proposed discovery of a trade secret in "any civil action," the *Griego* Court seized upon a provision dealing with the SCTSA's interaction with other "civil remedies." *See id.* at 533 (citing S.C. Code Ann. § 39-8-110). The District of South Carolina in *Griego*, relying upon a supposed harmonizing construction, ignored the plain language of the "substantial need" provision. Becoming untethered from the text, it then leapt to the conclusion that the SCTSA "does not apply to any action that is not based on misappropriation of a trade secret or protection against such a misappropriation," and thus did not apply to cases sounding "in tort and products liability." *Id.* The District of South Carolina continues to follow this precedent. *See, e.g.*, *Sturdivant v. Continental Tire The Americas, LLC*, No. 5:14-cv-02852, 2015 WL 263015, at *3 (D.S.C. Jan. 21, 2015).

In 2009, however, the Supreme Court of South Carolina construed the "substantial need" provision's applicability and meaning in still another case involving discovery of a tire-manufacturer's trade secrets, *Laffitte*, 674 S.E.2d 154. The *Laffitte* Court expressly rejected *Griego*'s reasoning, observing "that a federal

28

court decision interpreting state law is not binding on this Court," *id.* at 161 n.9, and holding that "the plain language of § 39–8–60(B) clearly indicates that trade secrets may be protected during discovery not only in misappropriation cases, but in 'any civil action' where trade secrets are sought during discovery." *Laffitte*, 674 S.E.2d at 162. This "lone authority on the other side of the issue," as Plaintiff has disingenuously described it, No. 16-141, Dkt. No. 8 at 8, definitively resolves the point, issuing as it does from the "final authority" on the meaning of South Carolina law. *Field*, 311 U.S. at 177; *see Republican Party of Minn. v. White*, 536 U.S. 765, 809 (2002) ("We are, of course, bound to accept the interpretation of [the State's] law by the highest court of the State." (quotations marks omitted)).

*Laffitte* did agree with *Griego* in this: the SCTSA granted "heightened protection for trade secrets and [demanded] a greater showing … of persons seeking discovery of such trade secrets" than was generally afforded under the federal rules and under federal common law. *Griego*, 19 F. Supp. 2d at 533. Hence, the Court in *Laffitte* recognized the SCTSA's commitment to refusing disclosure in all but the most extraordinary cases, and then only upon a particularized showing of direct relevance and strict necessity. *See* Saunders, *Trade Secrets in South Carolina*, 61 S.C. L. Rev. at 718, 726–32 (stating that "the test as applied by the supreme court [in *Laffitte*] affords increased protection to the holder of trade secrets than that of other jurisdictions").

29

Under South Carolina law, the Court explained, it is the proponent of discovery's burden to prove relevance, and "not only to the general subject matter of the litigation, but also … specifically to the issues involved in the litigation." *Id.* at 163. To show necessity, "the party seeking the information cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Id.* (internal quotation marks omitted). "Implicit in this is the notion that suitable substitutes must be completely lacking. In other words, the trial court must evaluate whether there are reasonable alternatives available to the party seeking the discovery of the information" by which the proponent might prove his case. "[U]ltimately, the trial court must require the discovery of a trade secret only when the issues cannot be fairly adjudicated unless the information is available." *Id.* (internal citation and quotation marks omitted).

The *Laffitte* Court's application of this standard left no doubt that, in South Carolina, the relevance and necessity bars are significant hurdles to obtaining trade secrets, not mere turnstiles on the way to discovery. In response to an effort to discover a tire's skim stock formula,[13] the Supreme Court of South Carolina

---

[13] As explained in that case, the "steel belt skim stock is a specifically formulated rubber compound calendered onto the steel cord to form the steel belts in a steel belted radial passenger or light truck tire, which is formulated to provide, among

concluded that the proponents of discovery had failed both because there was no expert testimony establishing "that if the experts were provided the skim stock formula and related manufacturing information, they would necessarily be able to opine on a defect" and because "other methods, such as testing the tire itself," were available. *Id.* at 163.

### D.    *The District Court did not apply South Carolina's heightened relevance and necessity requirements, nor did Plaintiff meet them.*

This Court reviews de novo both the District Court's interpretation and application of the law governing trade secrets. *See Solis*, 644 F.3d at 226; *Bryte v. Am. Household, Inc.*, 429 F.3d 469, 475 (4th Cir. 2005) ("Appellate review of a district court's interpretation or application of state law is *de novo*.").  Defendants submit that the pure legal nature of the issue presented permits this Court to resolve this case without remand on this record.  Such a course is consistent with this Court's 28 U.S.C. § 1292(b) jurisdiction.[14]  However, if this Court determines

---

other things, adhesion between the rubber and steel cord, and between the belts and surrounding components. The formula of a rubber compound such as the steel belt skim stock typically contains the chemicals or ingredients used in the compound; the quantities or relative percentages of those ingredients; and the manner in which those ingredients are processed to form the compound and give it the desired physical properties after it is vulcanized, or cured."  *Id.* at 157 n.2 (internal quotation marks omitted).

[14] This Court may "consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court. Jurisdiction extends to the order, not the

not to pursue that course, it is logically bound to reverse in light of the lower court's application of the wrong legal standard, and to remand the case for further proceedings under the correct standard.

The Magistrate Judge, whose reasoning was adopted in full by the District Court, JA 587, did not apply South Carolina law or anything like it. Instead, the Disclosure Order exclusively relied on federal case law, and recited the traditional three-factor test without elaboration. JA 563 (quoting *In re Pechiney Plastic Packaging, Inc. v. Curwood, Inc.*, 220 F.R.D. 452, 452 (D.S.C. 2004) (quoting *Coca-Cola Bottling of Shreveport*, 107 F.R.D at 292)); JA 564. Although South Carolina law, specifically *Laffitte*, was urged upon the court below by Defendants both in briefing and at argument, JA 381; JA 580 & n.3; JA 602–04; JA 704:6–18, the Disclosure Order studiously avoided reliance on that authority and plainly deviated from its logic. *See* JA 563–64; JA 704:23–705:1, 4–9.

Under *Laffitte*, the evidence offered by Plaintiff plainly falls short as to the Trade Secrets. The testimony cited by the Magistrate Judge is similarly conclusory as that found wanting in *Laffitte*. Also, as in *Laffitte*, affirmative testimony was offered that knowledge of the trade secret would not permit a conclusion to be drawn about the performance characteristics of the tire at issue, and that structural analysis was the appropriate means of testing the tire's design. *See* JA 244, 246–

---

question alone." 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3929 (3d ed.) (collecting cases).

47, ¶¶ 5, 13, 15 16; JA 466.  And, as in *Laffitte*, this testimony went unanswered.

674 S.E.2d at 164–65.  Moreover, again as in *Laffitte*, Plaintiff has been afforded a

wide array of information regarding the Tire in Question and the Subject Tire,

refuting the assertion that knowledge of the Trade Secrets is necessary for proving

Plaintiff's case.[15]

To the extent the evidence in this case differs from that offered in *Laffitte*, it

weighs *against* disclosure.  For here, the evidence presented from Plaintiff's Expert

affirmatively proves that Plaintiff is able to offer an opinion of design defect and of

an alternative design without knowing the Trade Secrets.  Plaintiff, in fact, did so

through Carlson.  *See* JA 419, JA 609:13–18, JA 611:8–24; JA 832–35, 838, 840–

41, ¶4, JA 842, ¶¶17–18.  At his deposition, Carlson conceded, "off the record,"

that "the inner liner thickness is what I'm criticizing the most and testing …."  JA

611:18–23.  He also conceded that he would give the same opinions "with regard

to design defect and manufacturing defect" whether he knew the Butyl Content or

---

[15] This includes access to the Tire in Question, and the other seven examples of the Subject Tire taken from the RV, for inspection and testing, JA 206; JA 258–61; JA 378 n.4; JA 404–07; JA 408–09, information about the thickness of the inner liner of the Subject Tire and other models in the same production line, as well as the development file and engineering specifications, internal testing results, cut tire sheets, and Global Master Specification for Cut Tire Limits applicable to the Subject Tire (and others).  JA 263–64; JA 162; JA 818; *see also* JA 986:2–14, JA 987:11–23).  Plaintiff also has been provided all discovery from an earlier case involving the Subject Tire.  Dist. Ct. Dkt. No. 56 at 16–19.  Defendants objected to discovery of information about other tires in the same tire line and reserve their objections to the relevance of that information to the underlying case.

not. JA 1197:19–1198:14. Finally, Plaintiff brought a motion for summary judgment premised upon his allegation of design defect, heavily relying upon the discovery materials already provided. *See* JA 196–205. In light of this, no court could find that "suitable substitutes" to discovery of the Trade Secrets were "complete lacking." *See Laffitte*, 674 S.E.2d at 163.

Thus, it is clear that at a minimum, the Disclosure Order should be reversed and remanded for further proceedings in accordance with South Carolina law, as definitively interpreted by the Supreme Court of South Carolina in *Laffitte*. In the alternative, this Court could and should conclude, on this record, that Plaintiff has failed to demonstrate that compelled disclosure is available under South Carolina law.

## CONCLUSION

For all of the foregoing reasons, the Court should reverse the Disclosure Order and either remand for further proceedings in accord with the South Carolina Trade Secrets Act and controlling South Carolina precedent or itself deny the Motion to Compel and grant to Defendants protection from disclosure of the Trade Secrets.

Defendants respectfully request that oral argument be granted in this matter.

Respectfully Submitted,

s/ _____

E. Duncan Getchell, Jr.

34

E. Duncan Getchell, Jr.*
 (804) 775-4388
Michael H. Brady
 (804) 775-4327
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916

*Counsel of Record

M. Gary Toole
 (407) 838-4061
Bianca G. Liston
 (407) 838-4057
McDONALD TOOLE & WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, Florida 32801

Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing OPENING BRIEF OF APPELLANTS complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 8,745 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as it has been prepared in Microsoft Word 2010, Times New Roman, 14 point font.

DATED: March 29, 2016

s/_____
E. Duncan Getchell, Jr.

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2016, the foregoing OPENING BRIEF

OF APPELLANTS was served on all counsel of record through the CM/ECF

system.

DATED: March 29, 2016

s/ _____

E. Duncan Getchell, Jr.

*Counsel for Appellants*